**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

   Plaintiff,

         Case No. 05-80441
v.          Hon. Gerald E. Rosen

KARL R. KAECHELE, JR.,

   Defendant.
_____/

**OPINION AND ORDER**
**REGARDING VARIOUS PENDING MOTIONS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on   November 29, 2006  

PRESENT:  Honorable Gerald E. Rosen
      United States District Judge

## I.  INTRODUCTION

Defendant Karl R. Kaechele, Jr. is charged in an April 11, 2006 second

superseding indictment with three counts of traveling abroad with the intent to engage in

illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).  Through the present motions,

filed on March 22, 2006, Defendant seeks:  (i) to suppress the evidence obtained during

the execution of a warrant authorizing the search of a computer at Defendant's residence

in St. Petersburg, Florida; (ii) to exclude from the evidence at trial certain journals and

statements taken from Defendant at the time of his April 26, 2005 arrest at the Detroit

Metropolitan Airport following his return from southeast Asia; and (iii) the dismissal of

the indictment on the grounds that 18 U.S.C. § 2423(b) is unconstitutionally overbroad and vague, among other purported infirmities.

Defendant's three motions were addressed at a hearing held on August 8, 2006. Having reviewed Defendant's motions and the Government's responses, and having considered the arguments of counsel at the August 8 hearing, the Court now is prepared to rule on these motions. This opinion and order sets forth the Court's rulings.

## II.  FACTUAL BACKGROUND

On April 26, 2005, Defendant Karl R. Kaechele, Jr. arrived at the Detroit Metropolitan Airport on Northwest Flight 26 from Manila in the Philippines. During a routine customs inspection of Defendant's luggage, federal Customs and Border Protection ("CBP") officers discovered nine packets of photographs, many of which depicted nude Asian women. The backs of these photographs had handwritten notations that appeared to reflect the names of the women, the dates of the photos, and log numbers.

During their search of Defendant's luggage, the CBP agents also discovered several journals that appeared to contain detailed notes regarding Defendant's most recent and prior travels to Southeast Asia. These journals included specific and graphic descriptions of sexual encounters with females, including such details as the date of the encounter, the name and age of the female, the city where the encounter occurred, a rating of the encounter, the amount of money paid, and a log number of the photo taken of the female. According to the journal entries, many of these sexual encounters involved young girls between the ages of 8 and 15. The search of Defendant's belongings also

2

revealed a travel list, dated the day of Defendant's departure from the United States, that included such items as Viagra, KY jelly, and penicillin, and Defendant was found to be carrying Kamagra, a "knock-off" form of Viagra.

In an interview by Immigration and Customs Enforcement ("ICE") agents following Miranda warnings, Defendant acknowledged having traveled to Southeast Asia nine times in the previous five years. Defendant also admitted that the journals found in his luggage belonged to him, and that he had made the entries in these journals. Defendant further acknowledged that he took numerous photographs of females while abroad, but indicated that he does not bring back photos of young girls for fear of getting in trouble with customs officials.[1] Finally, Defendant stated that he had used a computer at his residence to make online reservations for his overseas travel, and he acknowledged having an e-mail account and an Internet service that he had used to view nude images online.

Further investigation revealed that Defendant had spent nine of the previous twelve months in Southeast Asia, traveling there on four separate occasions. These travel dates were found to be consistent with the dates of the entries in his journals describing sexual encounters with females. Accordingly, on April 27, 2005, Defendant was charged in a criminal complaint with traveling in foreign commerce to engage in illicit sexual

---

[1]As discussed below, this characterization of Defendant's statements is found in the affidavit in support of the search warrant that is the subject of Defendant's motion to suppress. Defendant, however, disputes the accuracy of this characterization, contending that it derives from a misleading and out-of-context juxtaposition of his responses to various queries made by the ICE agents.

conduct, in violation of 18 U.S.C. § 2423(c), and Magistrate Judge Majzoub issued a

warrant for his arrest.

Defendant subsequently was charged in a May 5, 2005 indictment with a single

count of traveling abroad between February 1 and April 26, 2005 for the purpose of

engaging in a commercial sex act, in violation of 18 U.S.C. § 2423(b).  This indictment

has twice been superseded, with Defendant now facing three separate charges of traveling

in foreign commerce for the purpose of engaging in illicit sexual conduct, covering the

periods of February 1 through April 26, 2005 (count one), January 31 through February

21, 2004 (count two), and June 1 through June 20, 2004 (count three).

### III.  ANALYSIS

As noted at the outset, Defendant has filed three motions that the Court addressed

with counsel at an August 8, 2006 hearing and subsequently took under advisement.

First, Defendant seeks to suppress the evidence seized during the execution of a warrant

authorizing the search of a computer at his residence in St. Petersburg, Florida.  Next, he

has filed a motion *in limine* seeking to preclude the Government from offering into

evidence at trial certain journals found in his possession and statements he allegedly

made at the time of his April 26, 2005 arrest at the Detroit Metropolitan Airport

following his return from the Philippines.  Finally, Defendant has moved for the

dismissal of the indictment on the ground that 18 U.S.C. § 2423(b) is unconstitutional in

various respects.  The Court addresses each of these motions in turn.

### A.    Defendant's Motion to Suppress

4

### 1.      Additional Background Relating to This Motion

Following Defendant's arrest in late April of 2005, Special Agent James F. Rankin

of the Department of Homeland Security sought a warrant to search Defendant's

residence in St. Petersburg, Florida.  In his May 2, 2005 application for this warrant,

Agent Rankin set forth all of the information outlined above, and further stated that

Defendant's journals included entries describing sexual encounters with females of

unknown ages in Florida.  Finally, Agent Rankin noted that Defendant's Florida residence

was directly across from an elementary school, with two churches, a Christian academy,

and several public parks also located within a few blocks of this residence.  This

proximity, along with the entries in Defendant's journals reflecting overseas sexual

encounters with girls as young as eight years old and sexual activity with females of

unknown age in the local area of his Florida residence, led Agent Rankin to conclude that

Defendant "fits the profile for a pedophile."  (Defendant's Motion, Ex. B, Search Warrant

Aff. at ¶ 6.)

Agent Rankin's affidavit then set forth the grounds for his belief that there was

probable cause to search Defendant's Florida residence for evidence of criminal activity.

First, Agent Rankin cited his years of training and experience in investigating violations

of federal law, including the laws and regulations regarding the import and export of

prohibited items, child pornography, and crimes involving the use of computers.  The

agent also cited his training and experience in the methods used by travelers who import

sexually illicit materials or travel overseas for the purpose of engaging in illicit sexual

5

conduct.

Applying this experience and training to the facts learned in the investigation of Defendant, Agent Rankin opined that there was reason to believe, in light of the detailed entries in Defendant's journals and his evident habit of logging and photographing his sex partners, that photographic "trophy" images similar to those found in Defendant's possession would be found on Defendant's home computer. Agent Rankin further observed that Defendant's statement to customs officials regarding his reluctance to bring back photos of young girls from his overseas trips appeared deceptive in its wording, suggesting a probability that Defendant instead might have sent such photos via electronic means for access from his home computer. As additional grounds for searching the computer at Defendant's residence, the agent cited Defendant's express admissions that he had Internet access and an e-mail account, that he had used the internet to make online reservations for his most recent Southeast Asia trip, and that he had viewed nude images online.

As discussed in greater detail below, the application in support of the search warrant cited only a suspected violation of 18 U.S.C. § 2252A — a federal statute outlawing the shipment, receipt, or distribution of child pornography — as supplying probable cause to search Defendant's residence for evidence or the fruits of criminal activity. In Agent Rankin's accompanying affidavit, however, which was incorporated by reference into the application, the agent set forth his further conclusion that there also was probable cause to believe that Defendant was "involved in travelling in foreign commerce

6

and engaging in illicit sexual conduct with another person in violation of Title 18, United States Code, Section 2423." (Defendant's Motion, Ex. B, Search Warrant Aff. at ¶ 24.) This latter statute, of course, is the one that Defendant is charged with violating in this case.

Based on this application and affidavit, Magistrate Judge Thomas B. McCoun III of the Middle District of Florida issued a warrant to search Defendant's St. Petersburg residence for various items, including (i) computer hardware or software "that may be, or are used to book online foreign travel and to store or view images of the illicit activity," (ii) "[a]ny and all computer software," (iii) any and all documents or records in any medium, including electronic, pertaining to "online storage or other remote computer storage," or to "occupancy or ownership of the premises," (iv) any and all visual images of minors "depicting child pornography or children engaged in sexually explicit conduct [or] log books reflecting on same," and (v) "[a]ny and all material relating to [Defendant's] most recent and previous travel in foreign commerce to engage in illicit sexual conduct." (Defendant's Motion, Ex. A, Search Warrant, Attachment B.) Through the first of his three motions presently pending before the Court, Defendant seeks suppression of the evidence seized during the execution of this search warrant.

**2. The Search Warrant Was Supported by a Proper Showing of Probable Cause.**

As the principal ground for his motion to suppress, Defendant argues that the application and supporting affidavit prepared by Special Agent Rankin did not establish

7

probable cause to believe that a search of Defendant's residence would uncover evidence of the sole criminal violation cited on the face of the search warrant application — namely, a violation of the federal child pornography statute, 18 U.S.C. § 2252A. Although Special Agent Rankin's affidavit addressed Defendant's suspected violation of both this and a second federal statute, 18 U.S.C. § 2423, Defendant argues that any such claimed violation of the latter statute must be cited in the search warrant application itself, as opposed to an accompanying affidavit, in order to provide a lawful basis for the issuance of a warrant to search his residence for evidence of this alleged violation. Because this latter statute was not referenced in the application itself, but only in the accompanying affidavit, Defendant argues that this Court's probable cause inquiry must be limited to a determination whether the application and supporting affidavit established probable cause to believe that a search of Defendant's residence would yield evidence of a violation of the federal child pornography statute.

Defendant's argument on this point rests entirely upon the Sixth Circuit's recent decision in United States v. Abboud, 438 F.3d 554 (6th Cir. 2006). In that case, as here, the warrant application on its face listed only one statute that the defendants were suspected of violating — in that case, a federal bank fraud statute, 18 U.S.C. § 1344. The affidavit that accompanied and was incorporated by reference into this application, however, cited a number of other federal statutes — primarily, federal income tax laws — that, in the affiant's view, there was probable cause to believe the defendants had also violated. This led to a question that the court viewed as one of first impression, within

8

the circuit at least and perhaps more widely — namely, "whether an affidavit incorporated for the purpose of supporting probable cause [for] a single violation may also be incorporated to establish probable cause for additional violations not listed on the face of the warrant [application] but for which the affiant professes probable cause." Abboud, 438 F.3d at 569 (footnote omitted).[2]

In analyzing this issue, the court expressed concern that the reference to additional statutes and suspected violations in the incorporated affidavit, but not in the warrant application itself, gave rise to an ambiguity in the resulting warrant issued by the magistrate.  In particular, the court opined that it was unable to "determine whether the magistrate in this case found probable cause for all of the violations listed in the affidavit or for only the violation listed on the face of the warrant [application]."  438 F.3d at 569. The court explained:

> Three possible scenarios exist as to the magistrate's treatment of the additional violations listed in the affidavit.  Under scenario one, the magistrate reviewed the additional violations listed in the affidavit but not on the face of the warrant [application] and found that the government had shown probable cause for each of the additional violations.  She then either felt that the incorporation clause was sufficient to incorporate these additional violations or she failed to recognize that the additional violations were not listed on the face of the warrant [application].  Under scenario two, the magistrate reviewed the additional violations and found that the government had not shown probable cause for any of the additional violations but had shown probable cause for violation of 18 U.S.C. § 1344.

---

[2]In the omitted footnote, the court speculated that "the dearth of case law on this point in all likelihood stems from the fact that law enforcement officers customarily list on the face of the search warrant [application] all of the violations for which they seek evidence."  Abboud, 438 F.3d at 569 n.3.  As discussed below, however, there is perhaps another explanation for the absence of case law on this issue.

9

> She then noticed that the face of the warrant [application] only listed that violation, and that the incorporation clause only pertained to the probable cause for that violation.  She signed the warrant, believing that the basis of the warrant was solely the violation of 18 U.S.C. § 1344.  Under scenario three, the magistrate did not review the additional violations and the asserted probable cause in the affidavit because the face of the warrant [application] only listed 18 U.S.C. § 1344.

438 F.3d at 569-70.

Because the court found itself unable to "say that one scenario is more likely than the others," it adopted the narrowest possible reading of the resulting warrant, holding that "the magistrate approved the search warrant only with respect to the violation of 18 U.S.C. § 1344" that appeared on the face of the warrant application.  438 F.3d at 570-71 (footnote omitted).  In so ruling, the court rejected a posited argument by the Government that the magistrate's probable cause determination could be gleaned from the list of items that the magistrate had authorized to be seized:

> The government may argue that Attachment B [to the warrant], listing items to be seized, indicates that the magistrate found probable cause with respect to the other violations [listed in the affidavit but not the application]; for example, the list includes "[c]opies of all tax returns prepared on behalf of the above mentioned businesses and individuals," so that the list evidences that the magistrate found probable cause with respect to the tax violations. This item, however, can also be construed as evidence of a violation of 18 U.S.C. § 1344, bank fraud.  In other words, the government sought these income tax returns not to show the individual Defendants violated income tax laws, but to show disparities between paper and actual wealth as evidence of the check kiting scheme.  In fact, all of the evidence of these additional crimes could also be construed as evidence of bank fraud.

> The point is that we can only speculate as to whether the magistrate found probable cause with respect to the additional violations listed in the affidavit.  This Court will not uphold a search warrant based on such tenuous grounds.

10

438 F.3d at 570 (citation omitted).

Defendant argues that Abboud is squarely on point here, where the warrant application in this case, like the one under scrutiny in Abboud, listed only a single statute that Defendant was suspected of violating — here, a federal child pornography law, 18 U.S.C. § 2252A.  Although Agent Rankin's affidavit, which was incorporated by reference into the application, cited an additional statute that Defendant was suspected of violating — specifically, 18 U.S.C. § 2423, the statute under which Defendant is charged in the indictment — Defendant reads Abboud as requiring that the search warrant issued by Magistrate Judge McCoun be construed as narrowly as possible, reflecting a determination of probable cause as to only the child pornography offense cited on the face of the search warrant application.  It follows, in Defendant's view, that this Court's inquiry must be similarly limited to a determination whether the warrant application and accompanying affidavit established probable cause to search Defendant's residence for evidence of a child pornography offense.  Defendant further contends that the Court must suppress any evidence of other possible offenses apart from the suspected child pornography violation cited on the face of the warrant application.

As an initial matter, the Court feels compelled to express its concern with the ruling in Abboud, which seemingly rests upon a questionable application of a distinct body of case law addressing a wholly separate issue — namely, the incorporation of affidavits into search warrants.  As the Sixth Circuit has explained, the rule of incorporation permits a search warrant to be "construed with reference to a supporting

11

affidavit if the affidavit accompanies the warrant and the warrant incorporates the affidavit by reference." United States v. Blakeney, 942 F.2d 1001, 1024 (6th Cir. 1991). If, for example, "a warrant fails to describe with sufficient particularity a place to be searched, a supporting affidavit incorporated into the warrant can cure the insufficiency if the affidavit describes the place with sufficient particularity." United States v. Watkins, 179 F.2d 489, 494 (6th Cir. 1999).

The Supreme Court recently touched upon this issue of incorporation in a case where a search warrant application requested authorization to search for various sorts of weapons, but the resulting warrant described the property to be seized as a "two-story blue house rather than the alleged stockpile of firearms" that was believed to be inside the home. Groh v. Ramirez, 124 S. Ct. 1284, 1288 (2004). Noting that "[t]he warrant did not incorporate by reference the itemized list [of weapons] contained in the application," 124 S. Ct. at 1288, the Court found that the warrant did not satisfy the constitutional requirement of particularity in its description of items to be seized:

> The fact that the *application* adequately described the "things to be seized" does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. And for good reason: The presence of a search warrant serves a high function, and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.

12

> But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation.

124 S. Ct. at 1289-90 (internal quotation marks and citations omitted).[3]

The incorporation decisions, then, are directed at the question whether a **warrant** and any accompanying, properly incorporated documents, viewed together, sufficiently "describ[e] the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV, thereby channeling the activities of the officer executing the warrant and "assur[ing] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Groh, 124 S. Ct. at 1291-92 (internal quotation marks and citations omitted). This case and Abboud, in contrast, do not involve challenges to the particularity of a **warrant's** description of the items to be seized.[4] Rather, the "incorporation" at issue occurred when the **magistrate** reviewed the warrant **application** and incorporated affidavit to determine whether these materials established probable cause to search for and seize the items identified by the affiant as evidence or fruits of criminal activity.

It is not clear why this latter sort of "incorporation" should be a matter of particular concern to a reviewing court. The magistrate's task upon reviewing the warrant

---

[3]Among the appellate decisions cited by the Supreme Court in this passage was the Sixth Circuit's ruling in Blakeney, supra.

[4]Although, as addressed below, Defendant has mounted what he terms a "particularity" challenge to the warrant in this case, this is entirely separate from and unrelated to the "incorporation" challenge currently under discussion.

13

application and accompanying, incorporated affidavit in this case was "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there [wa]s a fair probability that contraband or evidence of a crime w[ould] be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). Moreover, in recognition that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation," the magistrate had no ground to insist that the materials submitted to him met any "[t]echnical requirements of elaborate specificity." Gates, 462 U.S. at 235, 103 S. Ct. at 2330 (internal quotation marks and citation omitted). Presumably, then, it would be reasonable to assume that Magistrate Judge McCoun reviewed the *entirety* of the materials presented by Special Agent Rankin, consisting of *both* the application and accompanying affidavit, in determining whether the agent had established probable cause to seize the items listed in Attachment B to his affidavit. Both of these documents, after all, were presented to the magistrate, with the affidavit expressly incorporated by reference into the application.

Upon conducting his probable cause inquiry, Magistrate Judge McCoun authorized the seizure of most, but not all, of the items described in Agent Rankin's affidavit and accompanying Attachment B. This being so, the duty of this Court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," with the magistrate's determination of probable cause entitled to "great deference" in this review. Gates, 462 U.S. at 236, 238-39, 103 S. Ct. at 2331-32 (internal quotation marks, alterations, and citations omitted). Because warrants are not accompanied by written

14

decisions explaining the reasoning behind the magistrate's probable cause determination, this Court must "conscientiously review the sufficiency of affidavits on which warrants are issued" in order to decide whether the "substantial basis" standard has been met. 462 U.S. at 239, 103 S. Ct. at 2333.

In light of these standards, it is not clear why the purported ambiguity identified in Abboud should be particularly troubling to a reviewing court.[5]  In that case, as noted, the court professed its inability to "determine whether the magistrate in this case found probable cause for all of the violations listed in the affidavit or for only the violation listed on the face of the warrant."  Abboud, 438 F.3d at 569.  Yet, as explained, the relevant question in reviewing a magistrate's probable cause determination is not whether the magistrate had a substantial basis for concluding that the application and accompanying affidavit established probable cause to believe that one or another specific "violation" had been committed.  Abboud, 438 F.3d at 569.  Rather, this Court's "substantial basis" review is directed at the question actually confronted by the magistrate — namely, whether the application and affidavit established a "fair probability that *contraband or evidence of a crime* w[ould] be found in a particular place."  Gates, 462 U.S. at 238, 103 S. Ct. at 2332 (emphasis added).  So long as each item authorized to be seized under a warrant satisfies this standard, it would appear unnecessary for a reviewing court to ascertain precisely which "violation" the magistrate identified as supplying the

_____

[5]Perhaps this explains the dearth of case law noted in Abboud — other courts arguably have *not* been troubled by the ambiguity cited by the panel in that case.

15

basis for the seizure of each particular item.[6]

The inaptness of Abboud's violation-based inquiry is illustrated in the cases

holding, for example, that a search warrant application need not specify the particular

offense that justifies the seizure of an item, except as "necessary to identify the objects to

be seized with sufficient particularity." United States v. Hill, 55 F.3d 479, 481 (10th Cir.

1995); see also United States v. Koyomejian, 970 F.2d 536, 548 (9th Cir. 1992)

(Kozinski, J., concurring) ("I am aware of no constitutional requirement that an applicant

for a warrant specify, and the judge determine, the precise statute violated; all authority is

to the contrary.").  Similarly, the Ninth Circuit recently declined to invalidate a search

warrant on the ground that "the statute [the defendant] violated . . . differed from the

statute listed in the affidavit," where "the affidavit established probable cause as to a

violation of California law and the items sought under the warrant corresponded to that

probable cause determination." United States v. Meek, 366 F.3d 705, 713 (9th Cir.

2004).  In this Court's view, then, it should not be necessary to ascertain whether

Magistrate Judge McCoun, in issuing the challenged search warrant, believed that Special

_____

[6]For the same reason, this Court does not share Abboud's concern that an unscrupulous
law enforcement officer might "hid[e]" claimed violations in his affidavit rather than the warrant
application, in an effort to "bootstrap these violations to the magistrate's probable cause
determination." Abboud, 438 F.3d at 570.  The presumed goal of the affiant, after all, is to
secure a warrant that allows him to seize all of the items identified in the materials submitted to
the magistrate.  It would ill serve this objective, then, to bury claims of illegality deep within an
affidavit, as this would merely diminish the likelihood that the magistrate would identify such
"hidden" violations as grounds for seizing the items sought by the affiant.  Rather, a more likely
concern would be that an application and accompanying affidavit would prominently feature a
"laundry list" of purported violations, in the hope that the magistrate would find that at least one
of these claimed violations provided a basis for seizure.

Agent Rankin's application and incorporated affidavit established probable cause to believe (i) that Defendant had violated **only** the federal child pornography statute, 18 U.S.C. § 2252A, (ii) that Defendant had committed **only** the offense charged in the indictment, a violation of 18 U.S.C. § 2423, or (iii) that both statutory provisions had been violated.  It matters only whether the magistrate had a substantial basis for concluding that probable cause existed to seize each of the categories of items specified in Attachment B to the warrant as evidence or the fruits of criminal activity, without regard to precisely which of the crimes cited in Special Agent Rankin's application and affidavit might have supplied the basis for the magistrate's authorization.[7]

---

[7]Abboud's focus upon what a magistrate might have subjectively believed when issuing a search warrant, or what an affiant officer might have subjectively identified in an application or affidavit as the legal grounds for a search, also appears to run counter to the objective nature of a Fourth Amendment probable cause analysis, as repeatedly recognized in a long line of Supreme Court precedent.  As the Court recently emphasized:

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.  That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.  As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.  The Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.  Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.

Devenpeck v. Alford, 125 S. Ct. 588, 593-94 (2004) (internal quotation marks, alterations, and citations omitted); see also United States v. Abdi, 463 F.3d 547, 558 (6th Cir. 2006) (observing, in light of this Supreme Court precedent, that it was "constitutionally irrelevant" in that case what the arresting officers might have believed as to the legal basis for their detention of the defendant).

Nonetheless, this Court recognizes that it is bound to follow Abboud, at least insofar as this ruling governs the circumstances presented here.  As the Government points out, however, Abboud is distinguishable both as to its facts and as to its practical effect upon the proper disposition of Defendant's motion.  First, it bears emphasis that the list of items to be seized in Abboud did not resolve the perceived ambiguity in the magistrate's probable cause determination, because, in the court's view, "all of the evidence of the[] additional crimes [cited in the affidavit] could also be construed as evidence of bank fraud," the lone violation cited on the face of the warrant application in that case.  Abboud, 438 F.3d at 570.[8]  Under these circumstances, the court found that it could "only speculate as to whether the magistrate found probable cause with respect to the additional violations listed in the affidavit."  438 F.3d at 570.

Here, in contrast, the warrant's list of items to be seized provides considerably

---

If these are the standards by which courts must judge the legality of warrantless arrests, it would seem appropriate for a magistrate to be guided by the same standards in considering whether an application and accompanying affidavit establish probable cause for a search or seizure.  Cf. United States v. Calandrella, 605 F.2d 236, 243 (6th Cir. 1979) ("Inasmuch as we believe that the same policies apply with similar force in the context of an arrest warrant as they do in the context of a search warrant, we apply the same standards of review here.")  In either case, so long as the *facts* known to the officer (and set forth in his affidavit) provide probable cause, it should not matter whether the officer has correctly identified in his own mind (or in his application and accompanying affidavit) the legal basis for his ensuing course of conduct.  And, of course, once a magistrate has performed such an objective inquiry and issued the requested warrant, a reviewing court cannot possibly know — nor is there any evident reason why it should care — whether the magistrate adopted the legal views espoused in the application and affidavit, or instead arrived at a different justification for authorizing the requested search or seizure.

[8]As discussed below, this overlap blunts much of the force of the ruling in Abboud, at least as applied in this case.

18

more guidance as to the scope of Magistrate Judge McCoun's probable cause determination.  Consider, for example, item seven in the warrant's "Attachment B," which authorized the seizure of "[a]ny and all material related to [Defendant's] most recent and previous travel in foreign commerce to engage in illicit sexual conduct." Similarly, item one authorized the seizure of computer hardware and software "that may be, or are used to book online foreign travel and to store or view images of the illicit activity."  In light of the magistrate's authorization to seize these items, no speculation is necessary to conclude that the magistrate must have found probable cause to believe that Defendant had committed the offense referenced solely in Special Agent Rankin's affidavit, but not in the search warrant application — namely, a violation of 18 U.S.C. § 2423, which prohibits, among other things, "travel[] in foreign commerce . . . for the purpose of engaging in any illicit sexual conduct."  Given the substantial similarity between the language of the statute and the language of the warrant, it is evident in this case, as it was not in Abboud, that the magistrate did not confine his probable cause inquiry to the child pornography offense cited on the face of the warrant application.

By the same token, it is clear that the magistrate's inquiry was not confined to the foreign travel offense, to the exclusion of the child pornography violation.  To confirm this, one need only consider item six in the warrant's "Attachment B," which, after handwritten modification by the magistrate, authorized the seizure of "[a]ny and all visual depictions of minors depicting child pornography or children engaged in sexually explicit conduct."  This item, which lacks any reference to foreign travel, plainly rests upon a

19

finding of probable cause to search for evidence of a child pornography offense.

Accordingly, the purported ambiguity that confronted the court in <u>Abboud</u> simply is not

present here.[9]

In any event, the practical effect of the ruling in <u>Abboud</u> is not altogether clear,

particularly as applied to the facts and circumstances presented here.  The panel in

<u>Abboud</u> seemingly recognized as much, adding the following "caveat" to its decision:

> [A]lthough the warrant was not approved for the independent search of
> evidence for the additional violations [set forth only in the affidavit], it does
> not follow that all evidence of these additional violations found during the
> search must be suppressed.  As stated, *supra,* an overlap exists between
> evidence lawfully obtained through a search based on violation of [the bank
> fraud statute] and evidence of the additional violations.

<u>Abboud</u>, 438 F.3d 571 n.5.  In other words, having determined that the list of items to be

seized did not resolve the perceived ambiguity in the magistrate judge's probable cause

determination in light of the "overlap" in the evidence of bank fraud and of the other

offenses cited in the affidavit, the court recognized that this same "overlap" would justify

the seizure of evidence of the "additional violations" addressed in the affidavit, so long as

this evidence also bore some relationship to the bank fraud offense cited on the face of the

warrant application.

Applying this "caveat" here, Defendant would not necessarily be entitled to the

---

[9]The Government also correctly points out that affidavit in <u>Abboud</u> created a much
greater potential for ambiguity by listing no fewer than ***eight*** additional offenses that purportedly
justified the seizure of evidence.  <u>See</u> <u>Abboud</u>, 438 F.3d at 568.  Here, in contrast, Special Agent
Rankin's affidavit injected only a single additional statute, 18 U.S.C. § 2423, into the
magistrate's probable cause inquiry, beyond the child pornography statute cited on the face of
the search warrant application.

suppression of items evidencing a foreign travel offense, so long as the seizure of these same items could be justified through a proper determination of probable cause to believe that evidence of a child pornography offense would be found at Defendant's residence. Yet, by Defendant's own admission, the "overlap" here is substantial, if not complete, as he acknowledges that "[a]ll of the claimed evidence of [the] additional crime" cited in Special Agent Rankin's affidavit "can also be construed to be evidence of [a violation of] § 2252A." (Defendant's Reply Br. at 3 n.2.)[10]  Indeed, Defendant has failed to identify *any* specific items actually seized in the search that could only be viewed as evidence of a foreign travel violation, and not a child pornography offense.  Presumably, then, so long as Magistrate Judge McCoun had a substantial basis for authorizing a search of Defendant's residence for evidence of a child pornography offense, there would be no basis to suppress any of the items seized in the course of this search.

Turning to this substantive inquiry, the Court finds that Magistrate Judge McCoun had a substantial basis for concluding that a search of Defendant's residence would uncover evidence of a violation of the federal child pornography statute, 18 U.S.C. § 2252A.  This statute, as pertinent here, prohibits the shipment in interstate or foreign

--------

[10]This illustrates the circularity and inconsistency of the arguments that a defendant must make in order to appeal to the ruling in Abboud.  On one hand, the defendant must argue that a warrant's list of items to be seized does not resolve a purported ambiguity in the magistrate's probable cause determination, in light of the overlap in the items that would be subject to seizure under the alternative theories of criminal activity advanced in a warrant application and an accompanying affidavit.  Yet, this same overlap would justify the seizure of all such items solely by reference to the violation cited in the application, and without regard for the magistrate's probable cause determination as to the additional violations cited in the supporting affidavit.

commerce, receipt, distribution, or reproduction of child pornography. As noted by the Government, the following facts of relevance to the magistrate's probable cause inquiry were set forth in Special Agent Rankin's affidavit: (i) that journals had been found among Defendant's possessions upon his return from overseas travel, in which he graphically detailed sexual encounters with numerous females, including young girls between the ages of 8 and 15; (ii) that Defendant also was found in possession of several photographs (some nude) of his sexual partners, with log numbers corresponding to entries in his journals; (iii) that, upon being interviewed by customs agents, Defendant admitted "that he takes numerous photographs of females while abroad, but indicated that he does not bring back photos of young girls with him for fear of getting in trouble with U.S. Customs," (Defendant's Motion, Ex. B, Search Warrant Aff. at ¶ 6); and (iv) that Defendant further acknowledged that he had a computer at his residence, that he had used this computer to book his latest overseas travel, and that he had an Internet service provider that he had used to view nude images online and to establish an e-mail account. Thus, as stated by the Government, "the magistrate had before him information detailing a computer-savvy, photograph-taking individual, who in writing, detailed his sexual exploits with children." (Government's Response Br. at 11.)

Although, as Defendant points out, there is no indication that the photographs in his possession were digital, such that they (or others like them, depicting underage girls) could readily be transmitted to his home computer, this is offset by Special Agent Rankin's description in his affidavit, based on his training and experience, of behaviors

22

and activities common to child pornographers.  In particular, Special Agent Rankin explained that "[c]omputers and computer technology have revolutionized the way in which" such activities are carried out, with child pornographers now able to "transfer photographs from a camera onto a computer-readable format with a device known as a scanner," making computers "an ideal repository for child pornography."  (Defendant's Motion, Ex. B, Search Warrant Aff. at ¶¶ 13-16.)  Special Agent Rankin further stated that "[b]ased on my knowledge and experience, persons involved in foreign travel for sex with minors document and maintain evidence of these encounters in the form of photographs, video recordings, diaries, etc. as prized possessions or trophies," and he noted that Defendant "possessed notebooks explicitly detailing sex acts with young minor children with log numbers such as those used for digital photos kept on computers as files, indicating the picture files may be maintained on a computer hard drive or software or otherwise available via computer."  (Id. at ¶ 9.)  Finally, the agent characterized as "deceptive" Defendant's statement to customs agents that "he does not bring back photos of young girls with him for fear of getting in trouble with U.S. Customs," noting that Defendant "would not indicate if pictures of minors were sent to the United States by other means," and that "[i]t has been a technique of previous violators to send prohibited pictures of minors from foreign countries via electronic means to the United States rather than have them in their possession while clearing U.S. Customs."  (Id. at ¶ 6.)  Under these circumstances, the magistrate had a substantial basis for finding probable cause to search Defendant's residence for evidence of child pornography offenses.

23

To be sure, Defendant challenges the factual basis for Special Agent Rankin's assertion that Defendant's statements appeared "deceptive" and suggested the possibility that he had transmitted child pornography to his home computer via electronic means. In Defendant's view, this portion of Special Agent Rankin's affidavit misrepresented his statements to customs agents by unfairly juxtaposing his responses to separate lines of inquiry. Yet, for purposes of establishing probable cause to search, a law enforcement officer is not limited to express admissions of criminal activity, but may invite a magistrate to draw reasonable inferences from the totality of the facts and evidence presented in an affidavit. See United States v. Graham, 275 F.3d 490, 502-04 (6th Cir. 2001). Thus, it was wholly permissible for Special Agent Rankin to juxtapose the statements made by Defendant during different portions of his interview in order to raise the inference that he might have transmitted child pornography electronically in order to avoid carrying such materials through U.S. Customs. In any event, even if Defendant himself did not acknowledge his awareness of this practice in the course of his interview, the magistrate properly could have relied on Special Agent Rankin's statement, based on his training and experience, that this was a common practice among traffickers in child pornography. This background information, coupled with (i) the entries in Defendant's journals evidently detailing his sexual encounters with underage girls and (ii) his possession of photographs (some nude) of his sexual partners, provided a substantial basis for the magistrate's determination of probable case to search for evidence of child pornography offenses.

24

Even assuming, contrary to Defendant's own acknowledgment, that this probable cause finding did not suffice to authorize the seizure of all of the various items listed in the warrant, this seizure would nonetheless be permissible, and Abboud would be distinguishable, so long as (i) Magistrate Judge McCoun's probable cause inquiry also encompassed the foreign travel offense referenced in Special Agent Rankin's affidavit, and (ii) there was a substantial basis for the magistrate's determination of probable cause as to this additional violation.  As explained earlier, the Court reads the search warrant and accompanying Attachment B as leaving no room for doubt that the magistrate considered and accepted ***both*** of Special Agent Rankin's theories of criminal activity. This leaves only the question, then, whether the magistrate had a substantial basis for concluding that a search of Defendant's residence would uncover evidence of a violation of 18 U.S.C. § 2423.  Subsection (b) of this statute, the provision under which Defendant is charged in the present indictment, prohibits travel in interstate or foreign commerce "for the purpose of engaging in any illicit sexual conduct with another person," 18 U.S.C. § 2423(b), and subsection (c) outlaws traveling in foreign commerce "and engag[ing] in any illicit sexual conduct with another person," 18 U.S.C. § 2423(c).  This statute further defined "illicit sexual conduct" as either "a sexual act . . . with a person under 18 years of age" or "any commercial sex act . . . with a person under 18 years of age."  18 U.S.C. § 2423(f).

Special Agent Rankin's affidavit clearly provided a substantial basis for the magistrate to find probable cause to search Defendant's residence for evidence of a

25

violation of § 2423.  As recounted in this affidavit, Defendant was found in possession of

journals describing his sexual encounters while traveling abroad, including detailed notes

about having sex with minors.  This information, by itself, provided a substantial basis for

concluding that a violation of § 2423 had occurred.  Moreover, the affidavit stated that

another magistrate had already issued a warrant for Defendant's arrest, based upon a

criminal complaint charging Defendant with a violation of § 2423(c).  Finally, the

affidavit linked this probable criminal activity to Defendant's home — and, more

specifically, the computer at this residence — by citing (i) Defendant's admission that he

had used his home computer to make the reservations for his trip abroad, and (ii) his

further admission that he had viewed nude images online.  All of this provided a

substantial basis for the magistrate judge's conclusion that there was probable cause to

search Defendant's residence for evidence of the offenses set forth at § 2423.[11]

### 3.   The Search Warrant Was Not Overbroad for Failure to Particularly Describe the Computer Files Sought in the Search.

As his final issue in his motion to suppress, Defendant suggests that the search

---

[11]As the Government points out, even if the Court were to read the decision in Abboud as invalidating the search warrant in this case, suppression still would be inappropriate under the good faith exception recognized in United States v. Leon, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421 (1984).  There is no suggestion here that the warrant application contained knowing or reckless falsehoods.  Nor can it be said that Magistrate Judge McCoun acted as a mere "rubber stamp," where he edited and limited the Government's proposed list of items to be seized in several respects.  Finally, to the extent that Abboud imposes a requirement that all suspected violations must be listed on the face of the warrant application, the Sixth Circuit expressly acknowledged that it "ha[d] not [previously] addressed" this issue.  Abboud, 438 F.3d at 569. Thus, the court's 2006 ruling on this point cannot possibly be the basis for a determination here that the executing officers acted unreasonably in believing that the warrant issued by Magistrate Judge McCoun in May of 2005 was valid despite this technical defect.

warrant issued by Magistrate Judge McCoun was invalid for lack of a more particular description of the specific types of files to be searched for and seized during the examination of his home computer.  In support of this contention, Defendant relies principally upon the Tenth Circuit's decision in United States v. Carey, 172 F.3d 1268 (10th Cir. 1999), as well as certain law review articles.  The Court agrees with the Government, however, that the present case is distinguishable from Carey in important respects.  In addition, this Court's review of the case law has revealed that the courts have been unwilling — and for good reason — to impose some of the more severe restrictions upon computer searches that have been debated in the academic literature.

In Carey, defendant Patrick Carey was arrested for suspected drug activity, and gave his consent for the police to search his residence for evidence of "any crime in violation of" federal law.  Carey, 172 F.3d at 1270.  In the course of this search, the police seized two computers, and they then sought and obtained a warrant to search these computers for evidence "pertaining to the sale and distribution of controlled substances." 172 F.3d at 1270.  The search of the computers, in turn, revealed "numerous files with sexually suggestive titles and the label "JPG," a common suffix for image files.  172 F.3d at 1270.  Upon opening and viewing these files, the police discovered that they contained child pornography.  Following his indictment on a charge of possessing child pornography in violation of 18 U.S.C. § 2252A, Carey moved to "suppress the material seized from his computer on grounds it was taken as a result of a general, warrantless search."  172 F.3d at 1270.

27

The Tenth Circuit held that the images seized from Carey's computer were subject to suppression. In so ruling, the court rejected the Government's contention that the seizure of the images was authorized under the "plain view" doctrine, just as, for example, an officer searching an ordinary file cabinet for evidence of drug transactions might inadvertently come across photographs depicting child pornography. See Carey, 172 F.3d at 1272. The court viewed the search of Carey's computer as differing from this hypothetical case in an important respect:

> The warrant obtained for the specific purpose of searching defendant's computers permitted only the search of the computer files for "names, telephone numbers, ledgers, receipts, addresses, and other documentary evidence pertaining to the sale and distribution of controlled substances." The scope of the search was thus circumscribed to evidence pertaining to drug trafficking. The government's argument the files were in plain view is unavailing because it is the contents of the files and not the files themselves which were seized. Detective Lewis could not at first distinguish between the text files and the JPG files upon which he did an unsuccessful word search. Indeed, he had to open the first JPG file and examine its contents to determine what the file contained. Thus, until he opened the first JPG file, he stated he did not suspect he would find child pornography. At best, he says he suspected the files might contain pictures of some activity relating to drug dealing.

> In his own words, however, his suspicions changed immediately upon opening the first JPG file. After viewing the contents of the first file, he then had "probable cause" to believe the remaining JPG files contained similar erotic material. Thus, because of the officer's own admission, it is plainly evident each time he opened a subsequent JPG file, he expected to find child pornography and not material related to drugs. Armed with this knowledge, he still continued to open every JPG file to confirm his expectations. Under these circumstances, we cannot say the contents of each of those files were inadvertently discovered. Moreover, Detective Lewis made clear as he opened each of the JPG files he was not looking for evidence of drug trafficking. He had temporarily abandoned that search to look for more child pornography, and only "went back" to searching for

28

drug-related documents after conducting a five hour search of the child pornography files.

We infer from his testimony Detective Lewis knew he was expanding the scope of his search when he sought to open the JPG files. Moreover, at that point, he was in the same position as the officers had been when they first wanted to search the contents of the computers for drug related evidence. They were aware they had to obtain a search warrant and did so. These circumstances suggest Detective Lewis knew clearly he was acting without judicial authority when he abandoned his search for evidence of drug dealing.

Although the question of what constitutes "plain view" in the context of computer files is intriguing and appears to be an issue of first impression for this court, and many others, we do not need to reach it here. Judging this case only by its own facts, we conclude the items seized were not authorized by the warrant. Further, they were in closed files and thus not in plain view.

Carey, 172 F.3d at 1272-73 (footnote omitted).[12]

Carey is distinguishable from the present case in two important respects. First, there is no claim in this case that the search conducted pursuant to the warrant was transformed into a different sort of search as a result of any discovery in the course of the examination of the files found on Defendant's home computer. In contrast to the defendant in Carey, Defendant here does not assert that the ***execution*** of the search warrant was overbroad. Rather, he contends that the ***search warrant itself*** was overbroad in authorizing the search of the entirety of his computer, without requiring that this search

---

[12]The court emphasized an important limitation to its ruling, however, stating that in light of the officer's "testimony that he inadvertently discovered the *first* image during his search for documents relating to drug activity, our holding is confined to the subsequent opening of numerous files the officer knew, or at least expected, would contain images of child pornography." 172 F.3d at 1273 n.4.

be narrowly tailored through the use of a methodology that would identify and target only those files and portions of the computer's memory that were likely to contain the evidence authorized to be seized under the warrant. While <u>Carey</u> discusses some of the academic literature cited by Defendant here and notes that "the file cabinet analogy may be inadequate" to characterize computer searches, <u>Carey</u>, 172 F.3d at 1275-76, that decision cannot fairly be read as requiring that the Government secure in advance a judicial authorization for the use of a particular protocol or methodology in searching a computer. At most, <u>Carey</u> requires that the Government be mindful in searching a computer of the scope of the authorization conferred by a warrant, with additional authorization needed in the event that an inadvertent discovery suggests a basis for a different line of investigation. <u>See</u> <u>United States v. Grimmett</u>, 439 F.3d 1263, 1268 (10th Cir. 2006) (construing <u>Carey</u> as "simply stand[ing] for the proposition that law enforcement may not expand the scope of a search beyond its original justification").

Indeed, the Tenth Circuit itself has subsequently "recognize[d] that a computer search may be as extensive as reasonably required to locate the items described in the warrant." <u>Grimmett</u>, 439 F.3d at 1270 (internal quotation marks and citation omitted). The courts have further recognized that the search of a computer for evidence of criminal activity is no simple task, and that the myriad circumstances that might arise during a computer search defy a one-size-fits-all methodology imposed by a magistrate in advance. As the Ninth Circuit recently explained:

> We understand the heightened specificity concerns in the computer

30

context, given the vast amount of data they can store. As the defendants urge, the warrant arguably might have provided for a less invasive search of [the computer's] email "inbox" and "outbox" for the addresses specifically cited in the warrant, as opposed to the wholesale search of the contents of all emails purportedly looking for evidence "reflecting" communications with those individuals. Avoiding that kind of specificity and limitation was not unreasonable under the circumstances here, however. To require such a pinpointed computer search, restricting the search to an email program or to specific search terms, would likely have failed to cast a sufficiently wide net to capture the evidence sought. Moreover, agents are limited by the longstanding principle that a duly issued warrant, even one with a thorough affidavit, may not be used to engage in a general, exploratory search.

Computer files are easy to disguise or rename, and were we to limit the warrant to such a specific search protocol, much evidence could escape discovery simply because of [a defendant's] labeling of the files documenting [his or her] criminal activity. The government should not be required to trust the suspect's self-labeling when executing a warrant.

United States v. Adjani, 452 F.3d 1140, 1149-50 (9th Cir. 2006) (internal quotation marks, alteration, and citations omitted); see also Guest v. Leis, 255 F.3d 325, 335 (6th Cir. 2001) (observing that law enforcement officers "may legitimately . . . check[]" during a computer search "to see that the contents of the directories corresponded to the labels placed on the directories," because "[s]uspects would otherwise be able to shield evidence from a search simply by 'misfiling' it" in a more innocuously named directory); United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) (observing that "it is no easy task to search a well-laden hard drive by going through all of the information it contains," and finding in that case that "[a] sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application"); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) (upholding warrants that

31

"described the computer equipment itself in generic terms and subjected it to blanket seizure," where "no more specific description of the computer equipment sought was possible" because the Government "did not know whether the images [depicting child pornography] were stored on the hard drive or on one or more of [the defendant's] many computer disks").

This brings the Court to the second and more significant distinction between this case and <u>Carey</u>. As discussed at length above, the search warrant in this case expressly authorized a search ***both*** for evidence of child pornography offenses ***and*** for evidence relating to violations of 18 U.S.C. § 2423. As to the former, Magistrate Judge McCoun explicitly altered the warrant as presented for his signature to permit the seizure of "[a]ny and all visual depictions of minors depicting child pornography or children engaged in sexually explicit conduct or log books reflecting on same." (Defendant's Motion, Ex. A, Search Warrant, Attachment B at¶ 6.) Thus, to the extent that Defendant argues that the search here, like the one in <u>Carey</u>, improperly encompassed an examination of his computer for image files, this ignores the fact that the warrant in this case expressly authorized such a search. Because, as explained earlier, the magistrate had a substantial basis for permitting this search, <u>Carey</u>'s holding regarding the overbroad execution of the more limited search warrant in that case has no application here.

Rather, as the Government points out, this case is more similar in this respect to a more recent Tenth Circuit decision, <u>United States v. Campos</u>, 221 F.3d 1143 (10th Cir. 2000). In that case, as here, the Government obtained a search warrant authorizing the

seizure of computer equipment from the defendant's residence that could be or was "used to visually depict child pornography . . . or the distribution, possession, or receipt of child pornography."  Campos, 221 F.3d at 1147.  The application for this warrant, like the application in this case, "provided an explanation as to why it was not usually feasible to search for particular computer files in a person's home," and why it instead was necessary to perform the search off-site in a controlled environment.  221 F.3d at 1147.  In upholding the district court's denial of the defendant's motion to suppress, the court expressly distinguished its ruling in Carey, explaining that "[u]nlike the officer in *Carey,* the officers here did not expand the scope of their search in a manner not authorized by the warrant."  221 F.3d at 1148.

So it is here, where the search warrant necessarily entailed a fairly comprehensive review of the files on Defendant's computer.  Defendant has not suggested a basis for concluding that the methodology employed by the Government in performing this search somehow expanded it beyond the boundaries authorized by the warrant.  Instead, he merely asserts that the search could have been more narrowly tailored to those file types and locations that were more likely to contain the materials specified in the warrant.  As explained, the case law does not require such an approach, which would invite a computer-savvy target of such a search to adopt strategies designed to defeat the Government's chosen protocol.  Accordingly, the Court rejects Defendant's contention that the search warrant in this case was overbroad, whether in its authorization or its execution.

**B.      Defendant's Motion *in Limine* to Exclude Journals and Admissions**

In his next motion, which he has aptly captioned as a motion *in limine,* Defendant seeks to exclude from the evidence at trial any written journals or notes taken from him at the time of his April 26, 2005 arrest at the Detroit Metropolitan Airport, as well as any admissions he made to the Government at the time of this arrest.  Such relief is warranted, in Defendant's view, under the so-called "*corpus delecti*" or "corroboration" rule.  As the Government points out in response, however, Defendant's motion is both premature and lacking in merit.

The "corroboration" or "*corpus delecti*" rule was addressed by the Supreme Court in Opper v. United States, 348 U.S. 84, 75 S. Ct. 158 (1954).  In that case, the petitioner contended, and the Court agreed, that "where extrajudicial admissions that point to guilt are made by the accused, after the date of the acts charged as crime, testimony by witnesses other than the accused as to such oral or written admissions cannot be accepted as evidence without corroboration of the facts stated."  Opper, 348 U.S. at 89, 75 S. Ct. at 162.  As more recently explained by the Sixth Circuit, "the principle enunciated in *Opper* . . . [is] that a defendant's extrajudicial, post-offense statements must be corroborated with independent evidence in order to assure reliability and truthfulness."  United States v. Marshall, 863 F.2d 1285, 1287 (6th Cir. 1988).  In Defendant's view, this "corroboration rule" requires the evidentiary exclusion of the journals in his possession at the time of his arrest, as well as the admissions he made to government agents at the time,

34

where the Government purportedly has not identified any independent evidence that might corroborate Defendant's statements as derived from these sources.

Be that as it may, the Government accurately observes that Defendant's motion is premature. As the Supreme Court has emphasized, "[t]he rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone." Warszower v. United States, 312 U.S. 342, 347, 61 S. Ct. 603, 606 (1941). Accordingly, the proper vehicle for raising the present challenge would be through a motion for judgment of acquittal under Fed. R. Crim. P. 29 at the close of the Government's proofs at trial, at which point the Court could determine under a complete record whether the Government's evidence as to Defendant's guilt rests impermissibly upon his own uncorroborated extrajudicial, post-offense statements. At the present juncture, the Court cannot yet make a determination as to the extent, if any, to which Defendant's statements might be independently corroborated, as it has not yet seen all of the evidence that the Government plans to offer in its case in chief.

In any event, the Government correctly points out that the "corroboration rule," by its terms, does not apply to much of the evidence that Defendant seeks to exclude. In Opper, as noted above, the Court addressed "extrajudicial admissions . . . made by the accused . . . *after the date of the acts charged as crime.*" Opper, 348 U.S. at 89, 75 S. Ct. at 162 (emphasis added). Similarly, in Warszower, the Court explained that the corroboration rule does not reach statements "made prior to the crime," as these do not

35

pose the risk of "errors in convictions based upon untrue confessions alone." <u>Warszower</u>, 312 U.S. at 347, 61 S. Ct. at 606. The Sixth Circuit emphasized this same point in <u>Marshall</u>, observing that "the principle enunciated in <i>Opper</i>" applies only to "a defendant's extrajudicial, <b><i>post-offense</i></b> statements." <u>Marshall</u>, 863 F.2d at 1287 (emphasis added).

The Sixth Circuit made this point even more explicitly in <u>United States v. Parnell</u>, 737 F.2d 521 (6th Cir. 1984). In upholding the sufficiency of the evidence in that case, the court explained:

> [I]t must be noted that the courts have distinguished between a defendant who admits facts sufficient to establish an element of a crime after the crime has been committed and a defendant who admits similar facts before, or during the commission of, a crime. The defendant's out-of-court admission must be corroborated in the former situation, but need not be corroborated in the latter instance.

<u>Parnell</u>, 737 F.2d at 537 (citing <u>Opper</u>, <u>Warszower</u>, and other cases). As the Government notes, a number of other circuits have drawn this same distinction (as has the Supreme Court in the above-cited decisions, of course). <u>See</u>, <u>e.g.</u>, <u>Government of Virgin Islands v. Hoheb</u>, 777 F.2d 138, 142 (3d Cir. 1985) (observing that "admissions made by a defendant after the commission of a crime must be corroborated in order to support a conviction," but that "admissions made before a crime occurred need not be corroborated," and that "more recent cases have extended this holding to apply to statements made during the course of a conspiracy"); <u>United States v. Soteras</u>, 770 F.2d 641, 644 n.4 (7th Cir. 1985) (rejecting an appeal to the "rule of corroboration" because

36

the challenged admission "was made during the course of the conspiracy rather than after it was over," and explaining that the rule "does not apply to statements made prior to or during the commission of the crime"); United States v. Head, 546 F.2d 6, 9 (2d Cir. 1976) (stating that "[t]he admissions made by [the defendant] in his taped conversation . . . were made during the course of the alleged conspiracy, rather than after its consummation, and may be sufficient to establish [his] guilt even without corroboration").

Under this proper understanding of the "corroboration rule," there is no need for the Government to introduce independent evidence that corroborates Defendant's statements in his journals.  Under the Government's theory of the case, at least, Defendant made the various entries in his journals contemporaneously with the sexual encounters that these entries describe.  As statements purportedly made ***during the course*** of his alleged criminal activity, and not after its conclusion, Defendant's journal entries require no independent corroboration in order to provide a sufficient basis for a jury's determination of his guilt.  And, of course, these journal entries themselves serve as the requisite independent corroboration of Defendant's admissions to federal customs agents at the time of his arrest.

To be sure, Defendant has cited the Second Circuit's recent decision in United States v. Irving, 432 F.3d 401 (2d Cir. 2005), withdrawn and superseded on rehearing, 452 F.3d 110 (2d. Cir. 2006), in support of his present appeal to the "corroboration rule."

The facts in Irving and here are somewhat similar — that case, like this one, involved charges of foreign travel in violation of 18 U.S.C. § 2423(b), and the Government's proof in that case, as here, included the defendant's own writings in his personal journal.  In its initial ruling, a two-judge majority held that the defendant's journal entries from his trip to Honduras, detailing "his luring of a 12-year-old boy back to his hotel with him and the sexual activities in which they engaged," ran afoul of the corroboration rule, where the statements in the journal were neither "self-corroborating" nor corroborated by "substantial independent evidence which would tend to establish the trustworthiness of the statement."  Irving, 432 F.3d at 406, 408-09 (internal quotation marks and citation omitted).[13]  Absent this evidence, the court found that the defendant was entitled to a judgment of acquittal on the counts charging him with traveling to Honduras in violation of 18 U.S.C. §§ 2423(b) and 2241(c).[14]

As noted, the court's discussion of the corroboration rule included the observation that some statements are "self-corroborating" — that is, they are "so reliable in and of themselves that they require no corroborative evidence."  432 F.3d at 409.  As examples, the court cited "statements made prior to the commission of the crime" and "statements made between co-conspirators to accomplish the ends of their criminal enterprise."  432

---

[13]Notably, the court issued its decision on appeal from the district court's denial of the defendant's Rule 29 motion for a judgment of acquittal.  Thus, Irving lends additional support to the Government's contention that Defendant's motion is premature.

[14]The latter statute outlaws travel across state lines or outside the United States with the intent to engage in a sexual act with a child under the age of 12.

F.3d at 409 (citations omitted).  Yet, while the court apparently recognized that the defendant's journal was "maintained contemporaneously" with the activities described in its entries, see Irving, 432 F.3d at 418 (Cabranes, J., concurring in part and dissenting in part), it did not explain why the defendant's contemporaneous journal entries during the course of the commission of the charged offenses did not qualify as "self-corroborating" within the above-cited line of Supreme Court (and Second Circuit) cases confirming the post-offense reach of the corroboration rule.  Under these circumstances, this Court cannot accept Irving's understanding of the corroboration rule, but instead is bound to follow the Sixth Circuit's clear and explicit rulings in Marshall and Parnell, under which corroboration is necessary only for statements made *after* the commission of a crime.

In any event, the Second Circuit's opinion upon rehearing in Irving substantially undermines Defendant's appeal to this out-of-circuit decision.  Significantly, the court elected in this decision not to "reach the question of whether the journal is self-corroborating," and instead "conclud[ed] that the evidence in the record provide[d] adequate corroboration" for the pertinent journal entries.  Irving, 452 F.3d at 119.  Upon identifying this corroborating evidence, the panel unanimously affirmed the defendant's conviction on all counts.  Thus, Irving is no longer good authority (if it ever was) for the proposition that the Government must produce independent evidence to corroborate the journal entries in this case.

C.     **Defendant's Motion to Dismiss the Indictment**

39

In the last of his three pending motions, Defendant seeks the dismissal of the indictment on the grounds that the federal statute under which he has been charged, 18 U.S.C. § 2423(b), is unconstitutionally broad, impermissibly vague, and exceeds the scope of Congress's authority under the Commerce Clause.  As discussed below, however, these assertions are defeated by the uniform weight of authority on each of these points.

### 1.    Section 2423(b), Either Facially or as Applied in this Case, Does Not Impermissibly Punish "Mere Thoughts" Without Action.

The statute under which Defendant has been charged in this case provides, in pertinent part:

> A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(b).  As his first challenge to the constitutionality of this statute, Defendant argues that it impermissibly criminalizes "mere thoughts," without requiring that the Government prove an "*actus reus*," or wrongful deed, that purportedly is necessary to hold a defendant criminally liable.  This contention, however, has been uniformly rejected by every circuit that has considered it to date.

In the first such decision, United States v. Gamache, 156 F.3d 1 (1st Cir. 1998), the defendant was charged with traveling from Maine to New Hampshire for the purpose of engaging in illegal sexual acts with children who, in reality, were the fictional creation

of a detective engaged in a sting operation aimed at uncovering child exploitation.  The

court emphatically rejected the defendant's assertion that § 2423(b) impermissibly

criminalizes "mere thought," without requiring proof of an objective act to which

criminal liability properly could attach:

> Whether it is constitutionally permissible to criminally punish "mere thought" may pose an interesting subject for academic discourse, but, as can be seen from our recitation of the practically undisputed facts in this appeal, that is not the way this statute is being applied to appellant. Appellant did not abstractly contemplate crossing state boundaries with a thought to committing a crime upon reaching his destination.  Appellant did not merely sit in the quiet of his house, contemplate evil thoughts, and then flip the channels of his television set, and continue blithely with other musings.  Appellant is not charged [with], nor does this statute, as applied, punish mere voyeurism.
>
> As the record clearly establishes, appellant, at a minimum, engaged in a *series of acts* long past the "mere thinking" stage.  This series of acts includes the interchange of extensive correspondence that eventually led to the actual trip and that shows that at some point he became an active participant in the planning of this trip; the purchasing of supplies, and their transportation in his vehicle (supplies which, it could be argued, were designed to be used to carry out his allegedly nefarious purposes); and his actual traveling to the subject place, on the subject date, at least arguably (if you interpret the evidence in favor of the Government) ready, willing and able to carry out his "educational" mission.  Given these circumstances, it can hardly be claimed that punishment for "mere thought" is at issue.
>
> The variation of this "thought crime" theme to the effect that the statute is unconstitutional because "it criminalizes one who crosses a state border with sinister intent, without the need to prove any *other* act" (emphasis supplied) demonstrates an inconsistency with the argument that "mere thought" is being punished.  The "other" act language concedes that at least *one* act took place, i.e., crossing a state line, which is something more than "mere thought".  An alternate interpretation of this claim presupposes that Congress cannot criminalize a single act.  This is a novel theory for which we can find no support.  One clearly defined act is

41

sufficient.  In this case, the act is "traveling in interstate commerce," a phrase which supplies not only the jurisdictional basis for the federalization of the proscribed conduct, but also the "objective act" that facilitates the proof of the intent, together with the other evidence introduced.  On this last point, of course, just crossing the state border is not enough:  the Government must also prove that the crossing was made with the intent to engage in the proscribed conduct.

Proof of intent naturally means proving state of mind, but that does not mean that one is punishing "mere thought" any more than that the requirement of proving *mens rea* in most crimes means that one is solely punishing "mere thought."  Now, undoubtedly, establishing intent, short of a situation in which it is admitted, is difficult and usually depends on the use of circumstantial evidence.  But as we all know, circumstantial evidence, if it meets all the other criteria of admissibility, is just as appropriate as direct evidence and is entitled to be given whatever weight the jury deems it should be given under the circumstances within which it unfolds.  In any event, difficulty of proof is not a valid criteria for determining the constitutionality of the present statute

Gamache, 156 F.3d at 8 (citations omitted); see also United States v. Stephen, No. 00-

1775, 19 Fed. Appx. 196, 198 (6th Cir. Aug. 20, 2001) (affirming a district court's

decision, in reliance on Gamache, that § 2423(b) does not impermissibly punish mere

thought).

Similarly, in United States v. Han, 230 F.3d 560, 563 (2d Cir. 2000), the Second

Circuit found that the evidence was sufficient in that case to defeat any claim that the

defendant had been convicted for "mere thoughts" without action:

The statute, as applied to Han, does not criminalize "mere thought." Han engaged in acts beyond mere thinking, evidenced by his telephonic communications in which he developed a plan and articulated a purpose to cross interstate lines to engage in sexual acts with a thirteen-year-old.  Han clearly formulated this plan before he crossed the state border and manifested the prohibited intent by doing so and by going to the arranged

42

meeting spot. Han's "mere thought" argument relies on the premise that he did not take steps sufficient to elevate his thoughts to an intention to commit the charged sexual acts with an underaged female. His crossing state lines, viewed in context with all the evidence, definitively establishes the contrary.

Accordingly, as Han formed the intent prohibited by § 2423(b) and took sufficient steps to bring that intent to fruition, including the crossing of state lines, § 2423(b) was constitutionally applied to Han. It is unnecessary to decide here, and thus it is not held, that a mere thought of engaging in a sexual act with a person under 18 years of age, where coupled with crossing a state line, constitutes a prohibited act and thus a violation of § 2423(b). Nor is it held that, if thus construed, § 2423(b) would pass constitutional muster. These questions can be considered when raised where the facts are so limited.

Han, 230 F.3d at 563; see also United States v. Bredimus, 352 F.3d 200, 208 (5th Cir. 2003) (holding that § 2423(b) "does not prohibit mere thought or mere preparation because it requires as an element that the offender actually travel in foreign commerce," and finding that the defendant's "travel to a foreign country from a domestic origin [was] sufficient to elevate his thoughts to an intention to commit the charged act").

Most recently, the Third Circuit rejected a defendant's contention that he could not "constitutionally be charged under 18 U.S.C. § 2423(b) for doing nothing more than traveling to another state with the intent prohibited by that section." United States v. Tykarsky, 446 F.3d 458, 471 (3d Cir. 2006). Again, the court emphasized that the statute "does not punish thought alone":

At least one act must occur for an individual to be convicted under § 2423(b): crossing a state line. That § 2423(b) contains an actus reus component, however, does not alone make it constitutional. The government cannot punish what it considers to be an immoral thought

43

simply by linking it to otherwise innocuous acts, such as walking down the street or chewing gum.  If § 2423(b) proscribed interstate travel with the mere abstract intent to engage in sexual activity with a minor at some undetermined point in the future, this would be a more difficult case.

But it does not.  Contrary to Tykarsky's characterization, the relationship between the mens rea and the actus reus required by § 2423(b) is neither incidental nor tangential.  Section 2423(b) does not simply prohibit traveling with an immoral thought, or even with an amorphous intent to engage in sexual activity with a minor in another state.  The travel must be *for the purpose of* engaging in the unlawful sexual act.  By requiring that the interstate travel be "for the purpose of" engaging in illicit sexual activity, Congress has narrowed the scope of the law to exclude mere preparation, thought or fantasy; the statute only applies when the travel is a necessary step in the commission of a crime.

Tykarsky contends that because it is not a crime to travel interstate, criminalizing travel with intent to commit a crime constitutes a "content-based restriction of a person's private thought processes."  This argument is misplaced.  That the legality of a physical act turns on criminal intent is hardly a novel proposition.  If criminal laws could not look to intent and motivation to distinguish lawful conduct from unlawful conduct, virtually every crime with a mens rea requirement would be invalidated on the ground that it constitutes a "thought crime."  For example, buying a gun and standing outside someone's home may be perfectly legal, but doing so with the subjective intent of shooting the person who comes out could constitute attempted murder.  Section . . . 2423(b) does not punish "thought" any more than the hundreds of crimes for which criminal liability turns on subjective intent.

Tykarsky, 446 F.3d at 471-72 (footnote and citations omitted).

Consistent with this uniform weight of authority, the Court readily concludes that § 2423(b), as applied to the allegations of this case, does not impermissibly criminalize "mere thought."  As in the above-cited cases, the Government here points to evidence of

44

acts beyond mere thinking, such as (i) Defendant's alleged preparation of a travel list, dated the day of his departure, that included such items as Viagra, KY jelly, and penicillin, and, (ii) most significantly, the entries in Defendant's journals reflecting his active engagement in illicit sexual conduct within the meaning of the statute. Whatever might be said about the application of the statute in a case where a defendant engages in only "mere thought" combined with foreign travel, the evidence here readily surpasses this threshold.

Nor does Defendant advance his cause by insisting that he is challenging the statute both as applied to him and on its face. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987); see also New York State Club Ass'n v. City of New York, 487 U.S. 1, 11, 108 S. Ct. 2225, 2233 (1988) (recognizing that a successful facial challenge generally requires a showing "that the challenged law . . . could never be applied in a valid manner" (internal quotation marks and citation omitted)). Since § 2423(b) may permissibly be applied *under the facts alleged here* without criminalizing "mere thought," it readily follows that Defendant cannot succeed in his facial challenge to the statute. Similarly, while Defendant seeks to distinguish the above-cited decisions by noting that each of them involved only an as-applied challenge on a "significant factual record," (Defendant's Suppl. Br. at 2), these

45

rulings demonstrate, at a minimum, that § 2423(b) was capable of valid application under the circumstances of each of those cases.

To be sure, a somewhat less demanding showing suffices to sustain a facial overbreadth challenge in cases where a statute is "so broad that it may inhibit the constitutionally protected speech of third parties" or otherwise poses a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." New York State Club Ass'n, 487 U.S. at 11, 108 S. Ct. at 2233 (internal quotation marks and citations omitted). Even here, however, the Supreme Court has cautioned that "[t]he overbreadth doctrine is strong medicine that is used sparingly and only as a last resort," requiring a demonstration from both the text of the statute "and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally." 487 U.S. at 14, 108 S. Ct. at 2234 (internal quotation marks and citation omitted).

In this case, the principal (and perhaps only) First Amendment right cited by Defendant is a posited guarantee of freedom of thought. Yet, there is no particular ground for concern that individuals who travel abroad with "mere thoughts" of engaging in illicit sexual conduct, without more, will regularly (or ever) be faced with prosecution under § 2423(b). Absent some objectively discernible reflection of such a traveler's intent as he embarks upon his travels, it is not clear how the Government might come to focus on such an individual as a possible violator of the statute. The same "difficulty of

46

proof" recognized by the First Circuit in <u>Gamache</u>, 156 F.3d at 8, likely will serve as a powerful deterrent against the Government prosecuting an individual who merely travels overseas with impure thoughts unaccompanied by any objective acts indicative of an unlawful intent. At a minimum, Defendant has not persuaded the Court that § 2423(b) threatens to reach a substantial number of cases involving only protected thought and no action (beyond, of course, the act of traveling abroad).[15]

### 2.     Section 2423(b) Does Not Impermissibly Burden the Right to Travel.

Defendant next argues that § 2423(b) impermissibly interferes with the right to travel as protected by the Fifth Amendment's Due Process Clause. In Defendant's view, the statute improperly transforms wholly lawful travel into criminal activity on the sole basis of the thoughts in an individual's head. Again, however, the uniform weight of authority demonstrates that this is an untenable reading of the statute.

In <u>Bredimus</u>, <u>supra</u>, for example, the Fifth Circuit squarely rejected this same challenge to § 2423(b), explaining:

---

[15]To the extent that Defendant mounts a separate vagueness challenge to the statute, the Court rejects it on similar grounds. In particular, as the Government points out, § 2423(b) does not criminalize mere travel, nor even travel accompanied by thoughts of illicit sexual conduct. Rather, as explained in <u>Tykarsky</u>, 446 F.3d at 471, the statute prohibits travel "*for the purpose* of engaging in the unlawful sexual act." Because § 2423(b) is readily (and most naturally) construed in this limited manner, it does not leave an ordinary person without guidance as to what is permitted and what is prohibited. <u>See</u> <u>Columbia Natural Resources, Inc. v. Tatum</u>, 58 F.3d 1101, 1104-05 (6th Cir. 1995). Rather, as noted by the Third Circuit, a comparable requirement of intent is a commonplace feature of any number of criminal statutes. <u>See</u> <u>Tykarsky</u>, 446 F.3d at 472. Moreover, for the reasons already stated, the statute is neither impermissibly vague in all of its applications nor proscribes a substantial amount of constitutionally protected conduct, as necessary to sustain a vagueness challenge. <u>See</u> <u>Rendon v. Transportation Security Administration</u>, 424 F.3d 475, 480 (6th Cir. 2005).

47

> We agree that the right to travel is a fundamental right and that a government infringement on that right will be subject to strict scrutiny. While the right to travel is well-established, no federal court has ever held that an individual has a fundamental right to travel for an illicit purpose. Because this statute, as relevant here, only criminalizes foreign travel when the travel is done with an illicit intent, we find that Section 2423(b) does not impermissibly burden the fundamental right to travel.

Bredimus, 352 F.3d at 209-10 (citations omitted).  The Third Circuit adopted this reasoning in Tykarsky, supra, and found, in the alternative, that "[e]ven if we were to accept the proposition that § 2423(b) interferes with Tykarsky's fundamental right to travel, Congress clearly has a compelling interest in punishing individuals who travel interstate to engage in illicit sexual activities with minors, and § 2423(b) is narrowly tailored to serve that interest."  Tykarsky, 446 F.3d at 472 (citation omitted). Accordingly, this challenge lacks merit.

### 3.     The Statute Does Not Impermissibly Exceed the Limits of Congressional Power Under the Commerce Clause.

As his final challenge to § 2423(b), Defendant argues that Congress exceeded its power under the Commerce Clause by enacting a statute which, in his view, reaches conduct that "has absolutely no impact on commerce."  (Defendant's Motion, Br. in Support at 17.)  Once again, however, this contention rests upon the untenable proposition, unanimously rejected in the above-cited appellate decisions, that the statute criminalizes mere travel in interstate or foreign commerce "with impure thoughts." Properly construed, § 2423(b) does not transgress the limits of congressional power under the Commerce Clause.

As the parties agree, the Supreme Court's decision in United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995), provides the analytical framework for analyzing the Commerce Clause challenge in this case.  In Lopez, the Court confirmed the "three broad categories of activity that Congress may regulate under its commerce power:"  (i) it may "regulate the use of the channels of interstate commerce;" (ii) it is "empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (iii) it may "regulate those activities having a substantial relation to interstate commerce." Lopez, 514 U.S. at 558-59, 115 S. Ct. at 1629-30 (citations omitted).  When Congress acts within the first two categories, enacting legislation that "regulate[s] the channels or instrumentalities of interstate commerce, it is not bound by the 'substantial effects' test and retains plenary power to regulate things and activity that cross state lines."  United States v. Al-Zubaidy, 283 F.3d 804, 811 (6th Cir. 2002).  This authority arguably is even broader where a congressional enactment regulates foreign rather than interstate commerce.  See United States v. Clark, 435 F.3d 1100, 1116 (9th Cir. 2006); Bredimus, 352 F.3d at 208.

It is evident, both from the above-cited rulings of other circuits and the Sixth Circuit decisions addressing analogous statutes, that § 2423(b) is properly analyzed under the first Lopez category as a regulation of the "channels of interstate commerce."  In upholding the constitutionality of § 2423(b) against a Commerce Clause challenge of the sort advanced here, the appellate courts have uniformly concluded that the statute

49

regulates the use of the channels of interstate commerce. See Tykarsky, 446 F.3d at 470; Bredimus, 352 F.3d at 205-06; Han, 230 F.3d at 562. The same conclusion readily follows from the Sixth Circuit decisions addressing statutes that, like § 2423(b), include interstate or foreign travel as an explicit element of a criminal offense. See, e.g., Al-Zubaidy, 283 F.3d at 811-12; United States v. Page, 167 F.3d 325, 334-35 (6th Cir. 1999). Consequently, this Court finds, in accordance with the weight of authority, that § 2423(b) lies within the first category of legislation that Congress may enact consistent with its Commerce Clause power — a category within which, as noted, Congress exercises "plenary power" and no "substantial effects" inquiry is necessary. Al-Zubaidy, 283 F.3d at 811.

Nonetheless, Defendant suggests that the various cases upholding other statutes as proper exercises of congressional power to regulate the channels of interstate commerce are distinguishable, on the ground that these other statutes, in contrast to § 2423(b), all require an additional act beyond interstate or foreign travel. See, e.g., Al-Zubaidy, 283 F.3d at 808 (noting that the statute at issue in that case, 18 U.S.C. § 2261A, requires interstate travel, an intent to injure or harass another person, and that the target of this intent was placed in reasonable fear of death or bodily injury to herself or a family member); Page, 167 F.3d at 330 (addressing a statute, 18 U.S.C. § 2261(a)(2), that prohibits any person from traveling across state lines for the purpose of harassing, intimidating, or injuring a spouse and, in furtherance of that purpose, committing an act

50

that injures the spouse).  Yet, the significance of this distinction to a Commerce Clause

analysis is not explained, nor has Defendant cited any decision that turns on this

distinction.  To the contrary, the Fifth Circuit expressly discounted the legal significance

of such a distinction:

> We acknowledge that unlike Section 2423(b), which criminalizes crossing state (or international) lines with a criminal intent, without requiring the commi[ssion] of any further criminal act, [certain other] statutes require both crossing borders with criminal intent and the commission of an unlawful act thereafter.  However, we do not find that distinction dispositive here.  Courts have also upheld a murder-for-hire statute, 18 U.S.C. § 1958, which, like Section 2423(b), does not require the commission of a further act.  Section 1958 requires only that the government prove the defendant traveled in interstate or foreign commerce with the intent that a murder be committed for hire.  Like Section 2423(b), under section 1958, once the commerce facility has been used with the required intent, the crime is complete . . . .
>
> We find no reason to disagree with the aforementioned precedent as applied here.  Quite the contrary, we find the deference accorded to Congress under Section 2423(b) even more compelling when, as here, the commerce at issue is foreign, as opposed to interstate . . . .  Thus, on the facts presented, a court should allow Congress greater deference in regulating the channels of foreign commerce.

Bredimus, 352 F.3d at 207-08 (citations and footnote omitted).

Finally, Defendant again resurrects his claim, this time in the context of his

Commerce Clause challenge, that § 2423(b) impermissibly criminalizes "travel in foreign

commerce with impure and immoral thoughts [but] no injurious effect."  (Defendant's

Motion, Br. in Support at 19.)  As explained, however, "[s]ection 2423(b) does not

simply prohibit traveling with an immoral thought, or even with an amorphous intent to

engage in sexual activity with a minor," but instead outlaws "travel . . . *for the purpose* of engaging in the unlawful sexual act."  Tykarsky, 446 F.3d at 471.  Thus, the statute fits comfortably within Congress's Commerce Clause power to "impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature."  Al-Zubaidy, 283 F.3d at 811 (internal quotation marks and citation omitted).  Defendant has not cited any authority, nor is the Court aware of any, that requires that a bad intent or purpose be realized before Congress may take action under the Commerce Clause.  Accordingly, the Court rejects this final challenge to the constitutionality of § 2423(b).[16]

_____

[16]In the event that it might subsequently prove necessary to undertake an analysis of the pretrial proceedings in this case under the Speedy Trial Act, 18 U.S.C. § 3161, the Court finds that the entire period between Defendant's filing of his three pending motions and the Court's resolution of these motions is excludable under the Act.  First, the period between Defendant's filing of these motions and the August 8, 2006 hearing is wholly excludable.  See 18 U.S.C. § 3161(h)(1)(F); see also United States v. Robertson, 260 F.3d 500, 504 (6th Cir. 2001).  In addition, the Act expressly provides for the exclusion of up to 30 additional days following the August 8 hearing while Defendant's motions remained under advisement.  See 18 U.S.C. § 3161(h)(1)(J); see also Robertson, 260 F.3d at 504.  Finally, while the motions remained under advisement beyond this usual 30-day period, the Court finds that a continuance encompassing this additional period would serve the ends of justice and would outweigh the interests of the public and the defendant in a speedy trial, see 18 U.S.C. § 3161(h)(8)(A), where this additional time was necessary to review the plethora of recent decisions cited by the parties and uncovered in the Court's own research — including such rulings as Abboud, Grimmett, Adjani, Irving, and Tykarsky, among others — and to give careful thought and proper attention to the numerous significant constitutional and other legal issues, implicating still-evolving or unsettled areas of the law, that Defendant raised in his three motions.  See United States v. Pedroza, 269 F.3d 821, 830-31 (7th Cir. 2001) (deeming it "reasonable" that the district court required a period in excess of 30 day "to decide four complex suppression motions"); United States v. Becker, 965 F.2d 383, 389 (7th Cir. 1992) (finding that a period of advisement in excess of 30 days is appropriate where a pending motion implicates complex issues and thus "must be given more than an ordinary amount of thought").  Indeed, the length of this opinion amply illustrates the number

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's March 22, 2006 motion to suppress evidence is DENIED.  IT IS FURTHER ORDERED that Defendant's March 22, 2006 motion *in limine* to exclude journals and admissions also is DENIED.  Finally, IT IS FURTHER ORDERED that Defendant's March 22, 2006 motion to dismiss indictment also is DENIED.

Dated:  November 29, 2006

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 29, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

---

and complexity of the issues presented in Defendant's motions.

53